May it please the Court, I'm Andrea Asaro. I represent the Plaintiff Intervenors in the Hogya matter and the Plaintiffs in the Bryan and Jensen matters. There are two appeals before the Court that have not been consolidated, so unless the Court has another preference, I would propose to argue my opening on the Hogya appeal and then reserve some time to respond on the Bryan-Jensen appeal and do some true rebuttal on the Hogya matter, if that's acceptable. So I would like to reserve nine minutes for the response and rebuttal. Thank you. Sean Hogya, James Akins, Chris Wilson, and James Francis have monocular vision. That is, they have little or no vision in one eye and lack stereopsis, which is the ability to see in three dimensions, and they have impaired near-field depth perception. Under California's Fair Employment and Housing Act, they are actually disabled because their monocular vision is a physiological condition that limits seeing. They are also regarded as disabled because UPS believes mistakenly that anyone with monocular vision is incapable of driving any UPS vehicle commercially, regardless of size. Suppose, suppose that they are disabled under the California statute, even though they're probably not under the Federal statute, and suppose that they are limited in the life activity of working under the California statute, regardless of what the Federal statute might say, is that the end of it, or is there more that's before us? Well, what's before the Court in both cases, in both appeals, is simply whether they are disabled. If they are disabled, then we go back to the district court where UPS would have the opportunity to assert its affirmative defenses. The affirmative defenses are still in the case. They're just not up here. That's correct. That's what you're saying. That's correct. In the Hogya case, which has been here before on the ADA issues and was remanded, then after that the district court addressed the FEHA state law issues. And found, pardon me, that the Hogya plaintiff's intervenors were not disabled with respect to the major life activity of seeing. Now, as I understand, I'm sorry. I'm sorry, but just so it's clear, but that the Brian Jensen case, in that case, the issue was whether the plaintiffs were disabled with respect to working. And in that case, the district court said, yes, they are. Now, the opposing briefing, as I understood it, would like us to affirm on the alternative ground of one or more of the affirmative defenses. Is your assertion that we ought not reach those a prudential assertion or a jurisdictional assertion? In other words, we can't reach those because of the way the case came to us, or even if we could, we shouldn't because there is more factual development and argument and briefing and so forth that needs to happen. As I understand UPS's argument, it's that those affirmative defenses, I think they're making that argument on the Brian Jensen case. That even if plaintiffs, in that case, are disabled with respect to working, they still win because of the safety issues and so on. First of all, that's not part of the issue that was certified under 1292. So I think it is jurisdictional in that sense. What was certified under 1292 is whether they're disabled with respect to the major life activity of working. But beyond that we'll find out. The point of defense is that this is a, I get mixed up on exactly what the verbal formulas are, but basically that it's a permissible safety requirement by UPS would not be foreclosed. UPS would still have that defense available to it, even if you won everything you can win in this court. I think so, although certainly we would argue that because the district court has already found that the vision protocol is not, does not meet the business necessity defense and is not. Could you talk more clearly? I couldn't hear you. I'm sorry. I mean, the short answer is yes. I think the only issue before the court is whether my clients are disabled. But as a practical matter, if and when this goes back on the issue of the affirmative defenses, the issue of the validity of the vision protocol was already adjudicated under the ADA. Except that if it's not a final judgment, presumably the district court has the discretion of further argument or evidence. I would think so. But I do think that the only issue before this court is whether the plaintiffs are disabled. One thing that the district court did on an affirmative defense that kind of concerned me, he said that the California safety of others defense was no good because, quote, driver monocularity slightly increases the risk of accident, close quote. And I was wondering just how much risk of UPS drivers being more likely to run down little kids in a street because they can't see out of one eye, how much do we have to impose on the public before the increase in risk is enough for that to be a defense? I think, obviously, no one wants anyone who's unsafe to be driving anything anywhere at any time. But I think the concern here is that by using the vision protocol, UPS is categorically basically determining without an individual assessment that no one with monocular vision can drive safely. And I think that's what the district court found objectionable the first time around, which was it was basically throwing out the competent drivers with the incompetent drivers and you can't do that. Sometimes generalization is permissible and sometimes it isn't. What he said was driver monocularity slightly increases the risk. One way to read that is, oh, it's only slight, forget it. Another way is it's an increased risk. That's a permissible safety criterion. Correct, Your Honor. But I think the district court also very clearly said in finding that the vision protocol did not meet the safety or business necessity standards under the ADA that it swept too broadly and that it represented or reflected, rather, UPS's stereotype. What I'm asking is should we review that? I'm sorry? Should we review that? I don't believe that. Certainly in the Hoagie appeal, that is not before the court. And in the Larry, Brian, and Mark Jensen case, UPS would like it to be, but it is beyond the scope of the certification under Section 1292. Again, the only issue that's before the court now is whether or not plaintiffs are disabled. With respect to seeing for the Hoagie plaintiffs and with respect to working for the Brian and Jensen plaintiffs. And I think if I can address the issue on the Hoagie plaintiffs first, I think where the district court went astray is in finding that they weren't disabled because they hadn't shown that their impairment limited them outside the workplace, in daily life, compared to others, and so on, and effectively imported the Toyota standard into what is purely a state law issue at this point. There's nothing in FEHA anywhere that says that a plaintiff must show that it is unusually difficult for them to see or that their impairment makes the life activity, the achievement of life activity, unusually difficult. The district court also erred in taking into account what might be called mitigating measures. It's really actually unclear, frankly, whether the touch and feel techniques that the court relied on are mitigating measures because, in fact, they don't improve monocular vision. They don't improve stereopsis. They don't make it easier to see, just as the district court pointed out in the ADA case, just as braille doesn't help a blind person to see. And nonetheless, the district court concluded that because they had adapted to their monocular vision in their daily lives and were able to fish and dry their hair and so on, that they weren't disabled. That's not the standard under FEHA. Effectively, what the district court did is decided that they had adapted to their disability. Well, that's not the issue. The issue is whether they're disabled. I want to turn briefly to the issue of whether James Akins and Chris Wilson should be deemed to have waived the theory that they, too, are disabled with respect to the major life activity of working. As a theoretical matter, if we were to hold that all of the plaintiffs and all of the actions are disabled in the major life activity of working, under California law, would we have to reach the additional issue of whether they are also disabled from working? Does it make any difference? In other words, once labeled disabled with one major life activity, why would we go on to the next major life activity?  Well, it does make sense. In fact, I actually was thinking about that, and I'm reluctant as I am ever to concede anything. I think my hesitation, frankly, is that I just really don't know and I'm not sure. But my only concern would be, and my inclination is to agree, that if they're disabled and seeing, that's sufficient and we don't need to go to the next issue of whether they're disabled in working. Or whether they're regarded as disabled. If they are actually disabled, we certainly don't need to go to regarded as. Right. Unless there's an issue with respect to the reasonable accommodation that would follow, depending on the nature of the disability. But I'm not sure. And again, the distinction between actual, if they're actually, our position is that they're all actually disabled in seeing because of the lack of stereopsis and the impaired near field depth perception. There's something, I get into all the details of the case and I follow it. And then I come back out and I look it over generally and I get lost. And what I get lost about is either they're disabled in the major life activity of seeing or not. Well, they're blind in one eye, so they're disabled in the major life activity of seeing. And it sure seems funny to say they nevertheless have a right to drive trucks. Let me see if I can sort of tease this out. It seems like it sort of follows from the reason for disability that the affirmative defense is good. I think I can help tease this out. The problem is that the way in which they are actually disabled has to do with their near field depth perception. They lack stereopsis. Depth perception generally, when you're one-eyed, you have no depth perception. You use other cues. And for general daytime driving, it's no problem because of perspective cues. Nighttime driving, near distance, various situations, it is a problem. Well, I think the issue on lack of stereopsis and the near field depth perception is that with distance, the stereopsis problem abates. Because of perspective, something in the distance is far away. But at night, it's just a point of light, headlights, and you can't tell how far away it is. Well, I think, again, the idea would be what UPS fails to do is make an individualized assessment, I'm sorry, as to whether someone is or is not safe. But if I can stay a minute, for a minute, with the difference between the way in which. You know that they can't see out of one eye. They are actually, I think our position is that they are actually disabled because of the lack of stereopsis and near field depth perception. They are regarded as disabled because UPS mistakenly thinks that this particular impairment renders them incapable of driving anything, including a van, a small van, which they are perfectly capable of driving and are legally permitted to drive. But there are two separate questions. You don't necessarily win automatically if we were to hold that your clients are disabled within the meaning of the state law. That's just stage one. That's correct. And so you're saying at that point, we bounce it back to the district court, which then determines, notwithstanding that disability, is the rule that precludes their driving appropriate because of the safety needs and so on and so forth. So it doesn't mean that you win-win in the bottom line sense. That's correct. The narrow issue that's before this Court is whether they're disabled. And Judge Kleinfeld, you may be right. About the individual, the need for individual as opposed to group and determinations of qualifications, let's hypothesize people who are blind in both eyes and say you should be allowed to drive trucks, have somebody sit next to us, tell us if there's something in front of us or something. And UPS says that's ridiculous. Blind people in both eyes shouldn't be driving trucks. It's too dangerous. Do you then have a claim, no, there has to be an individual assessment? I don't think we would take that position, Your Honor. What's the difference in principle? The difference is that someone with monocular vision can see. Not out of one eye. They have impaired vision. Only out of the other. But they have vision. It's just impaired vision. And so the question on remand, if they're held to be disabled, is does that impairment make them unsafe to drive? And it may be that for some monocular, the district court found that Francis was not qualified. We think that that assessment has to be made individually. We also think he got the wrong standard on that, and that's why that issue is also before the Court with respect to the burden of proof. But it has to be an individualized assessment because people with monocular vision are different. And that's the problem with the vision protocol, is it just sort of makes a categorical blanket determination. So, well, you think that there can be no vision protocol at all or that it just has to be a higher barrier for the employer to meet? I think the problem with the vision protocol is that it's really designed as a screening mechanism to screen out people with monocular vision. And as I understand the law on these screening devices, you really can't have a separate test for people with disabilities than you have for others. There has to be and people have to be treated the same. And if there is somebody with a disability and that is determined through an individual assessment, then you assess, first of all, you take into account reasonable accommodations when you do that. But beyond that, it really has to be an individual assessment and not just a blanket. You have monocular vision, so you can't possibly be a safe driver. And that's what the vision protocol does. But, again, the issue before this Court is just whether they're disabled. A little factual issue. These smaller trucks that they want to drive, do they have a rear view mirror in the center of the windshield where you can look out or does the cargo even in the small trucks make that impractical so that you have to look at the side view mirrors on the two sides of the truck? I have to confess I don't know the answer to that. It's a critical question. Because what you do if you're monocular is you can use the rear view mirror in the center of the windshield. Let me be clear. Our position is that my clients can safely drive even the smaller UPS package cars, which do not have a rear view mirror, and that they are capable of driving them with the side mirrors. In fact, the vision protocol provides that additional mirrors is something that's supposed to be considered for someone who lacks stereopsis. Okay. Sorry. I just want to turn really briefly to James Francis so that he's not forgotten. His appeal is still before the Court on the issue of whether the district court applied the right burden of proof. Well, regardless of the burden of proof, he has a history of motor vehicle accidents himself that is individualized to him, not looking at statistics on monocular individuals, but he himself has been involved in motor vehicle accidents. Regardless of who has the burden of proof, why isn't that sufficient to demonstrate that he is not a qualified individual with a disability? He's just not a qualified individual, whether he could see or not. Well, there is no per se rule, I don't think, about the number of accidents or what it is that disqualifies someone. He had an accident when he was a teenager. I think he hit a fence or I'm not quite sure what it was. And then he had an accident that was not his fault when he was 16. Both on his blind side, right? I don't know about the one when he was 16. I believe that's true about the one when he was at UPS. But the question really is who has the burden of proof on that, And the district court imposed that burden on Mr. Francis, which is really not the burden. It also the court also failed to take into account the obligation to provide reasonable accommodations and also, again, applied a different standard as to Mr. Francis than it did then to others. I don't want to use too much of my time because that issue has actually been briefed. So if the Court has no other questions, I'll reserve my time. Thank you.  May it please the Court. Mark Perry for UPS. I can just start with two factual issues that Mrs. Sorrell got wrong. First, Judge Kleinfeld, you asked about the mirrors. The finding of fact is paragraph 21 in the ADA appeal makes clear that no UPS truck has a rearview mirror inside. They're either ordered without windows or they're put up plywood and then painted over so that the packages don't break the windows. So none of these trucks have rearview mirrors. With respect to the accidents, Judge Graber, Ms. Sorrell said it wasn't his fault. Finding of fact number 161 in the ADA appeal, Judge also found that it would have been avoidable by a person with binocular vision. On the broader issues, Your Honor. It's not the same as saying it was his fault, though. It's correct, Your Honor. He found that a person with binocular vision could have avoided this accident and, therefore, that Francis had not carried his burden of showing that he was qualified to drive safely. That's a finding of fact that is entitled to clearly erroneous review. They haven't made out anything that's wrong. From what I have read of the legislative history of the California statute and the Colmenares decision and the other California cases, it would appear that California has taken a quite a bit broader brush approach than the ADA and has swept in a lot of individuals as disabled, thus requiring courts to go to the next step of the analysis. Okay, given that these folks are disabled, then what? Why shouldn't we take the common sense approach that a person who can see only out of one eye is disabled in the life activity of seeing? I mean, if you asked 100 people on the street who had no legal training, 99 of them would say, yeah, that makes sense, and why isn't that what the California legislature has done in the Popping Act? Because, Your Honor, the Popping Act did not overrule. In fact, it endorsed the unusually difficult standard that was re-set forth in the Colmenares case. Judge Alsop made a finding of fact that these employees do not find seeing unusually difficult as compared to the other folks in the community. They don't challenge, the plaintiffs don't challenge that finding of fact. They only challenge application of the unusually difficult standard. But the unusually difficult standard is set forth in a decision by the California Supreme Court interpreting state law. Under Erie, this court can't decide that that's the wrong standard and it can only decide whether Judge Alsop correctly applied it. And they don't claim that he didn't. They challenged the standard, not the findings. And the reason for that, Your Honor, if you listen to Mrs. Sarra's argument closely, she said that these individuals are disabled in seeing because they lack stereopsis. Well, first off, the UPS vision protocol does not preclude drivers from driving if they lack stereopsis. It just requires that the trucks be fitted with a couple of additional mirrors. Drivers who lack stereopsis may drive. But that gets to the next step of the analysis. That doesn't have to do with whether these individuals are or are not disabled within the meaning of state law. Your Honor, it's the first piece of that. Because the second piece of it is the only effect on seeing that a lack of stereopsis has is a, quote, lack of near-field perception. But, again, that argument runs straight into Judge Alsop's findings of fact. He found in the first appeal that monocular visions can't ñ that monocular individuals can and do compensate for the lack of stereopsis by using different cues and that, therefore, they do have depth perception. That's finding number 125 of the ADA appeal. So that we ñ If they're not disabled, why don't you get some water?  Thank you. If they're not disabled, why not let them drive all the trucks? Your Honor, they're not disabled in the major life activity of seeing. They are ñ they do have vision impairments. There's no dispute that there's an impairment. UPS screens out drivers that cannot meet two requirements, neither of which Mrs. Soro has mentioned today. First, central vision acuity of at least 2200 in the lesser eye. And the reason for that is tied to one of Judge Kleinfeld's questions. If the driver can't see in both eyes, even the plaintiff wouldn't argue that they should be allowed to drive. It is a ñ They have Braille on the ATM machines that they drive through at my bank. There must be some people that think blind people should be allowed to drive. We haven't seen that case yet, Your Honor. We would certainly not allow them to. And the reason is that when you're driving a UPS truck down a city street at 25 or 30 miles an hour, you have to be able to bring it safely to a stop. And a driver with less than 2200 vision in the lesser eye, if there's a bug or a spark or something gets in the other eye, 2200 is the standard for gross object perception, what would allow the driver to ñ 2200 means that letter E that most people could read at 200 feet away, you need to be within 20 feet ñ Correct. ñ with your glasses on? Correct. And that that is the level of blurry vision, if you will, it would require to see a person or a car coming at you. It's the same standard used for the second requirement. Let me ask you something that gets back to Judge Graber's question, I guess. I read the California statute similarly to Judge Graber. It looked to me like a great majority of people are disabled under California law, and where you do the sorting isn't on whether they're disabled. It's on whether there's a good business reason to not hire them for this or that job. Your adversary says, we don't reach that. So what the district court characterized in its findings is only a small increase in riskiness to pedestrians and other drivers is not something we should reexamine in this field. I was astonished ñ Did I get that right? I was astonished to hear that, Your Honor. First, we do think you should decide the disability question. When we brought up the affirmative defenses in the district court on remand, the plaintiffs filed a brief saying that Judge Alsop didn't have jurisdiction to consider those defenses because they were still in this court as a result of the reservation of jurisdiction in footnote 6 of the last opinion. You know, there's certainly a procedural morass here, but we would be within our authority, would we not, if we were to limit our holding to the question of whether the plaintiffs are disabled and then return the case to the district court for further processing of everything, and then the district court plainly would have everything else there. Your Honor, I think you have the discretion ñ the court has the discretion to do that. However, Judge Alsop made findings of fact on the affirmative defenses. We appealed that. It's all been fully briefed. I think the court could also proceed to decide it. I think it is in your hands at this point, not in ours. We've offered the court that option. You know, we don't think that these individuals are disabled at all. We certainly think on the evidence under both the business necessity defense and the special unique PFAS safety defense, which requires only a rational basis based in some statistics to believe that these employees bear any additional risk, that Judge Alsop's own findings establish that haven't been challenged. Those findings haven't been challenged anywhere in this appeal. Establish the safety defense and the business necessity defense under the requirements set forth in the law so that we can certainly get there on either path. We think that it would be the better course to decide the disability. You know, where the California legislature has said it's broader, it has not said that it's limitless. I mean, the California Supreme Court retains, as I said in Komenar, is the unusually difficult standard. The California statute retains the requirement of a major life activity. It's not all life activities. I don't quite see how you avoid the disability under California law, actually. The definition is so broad. That's why limits are without regard to mitigating measures. So you don't even consider people's glasses. And major life activities includes physical, mental, and social activities and working. And it's any disorder or condition that limits a major life activity. And it only has to limit it. It doesn't have to limit it substantially. But it has to make the achievement of a major life activity unusually difficult as compared to others in the population. That's Komenar's. That's the California Supreme Court's interpretation of the statute. And the Court found under that standard that these individuals do not have unusual difficulties. If I can offer an example, Your Honor, a major life activity, seeing this Court had a case recently involving eating. Eating is a major life activity. Eating chocolate is not a major life activity. One subset of the major life activity may not be. These individuals can see. That's the point of their one-handed drive. They can see as well as everybody else for virtually all purposes. But they can't see, they don't see the same way within a hundred feet. A person with one leg can walk as well as everybody else. Your Honor, I believe some people with one leg can and do not consider themselves disabled and others don't. That would certainly be a case-by-case inquiry. Well, I think they'd all be considered disabled as a matter of law. They might or might not have the attitude that they were limited in what they could achieve in their lives. But I think in terms of the statutory, the California statutory definition of physical disability, there's a section in which the legislature says we intend this to broadly define physical disability, to cover a lot of things broader than federal law. They do, Your Honor, but they don't say that we intend for every person in California to be disabled, which is what would happen under this legislation. How many people in California have vision in only one eye? Not that many compared to everybody else. Almost everyone in California, Your Honor, has difficulty with near-field death perception sometime over the age of 40. That's an ophthalmological fact. All of us, our eyes decay, degrade over time so that we have a problem reading, threading needles, tying fishing flies, and so forth. That happens to every individual. I think all of us are disabled under California law if you don't see as well without our glasses on. That is the plaintiff's position. We don't think that the California legislature meant to go that far that this Court should push the boundaries of California law. No, actually. Your Honor, I disagree with that because it kept major life activity. It's not every life activity. It's only major life activities. And it kept the unusually difficult standard. Culminari's went out of its way to reiterate that standard in the California Supreme Court's most recent decision. Well, it seems to me that there's ample room in the other pieces of the analysis to keep the results from being absurd in any given case. And that's why there are the safety and business necessity defenses. That's why there's the reasonable accommodation question. If you can put your glasses on and you can see, then don't come bothering us for more accommodations than that. I guess I'm not really sure I understand why you're fighting so hard to say that one-eyed people aren't disabled. It just seems odd. Your Honor, we're simply trying the best we can to apply the terms of the statute, and we don't think that the California legislature meant that every person in California is disabled. I wonder whether under California law, those of us who are a little heavy and a little old to be ballerinas are disabled. Your Honor, it's possible. I was noticing that two of the members of the bench are left-handed. If you were otherwise qualified to play for the SF Giants, you'd be disqualified from the single job of playing third base. And, Judge Graber, you might be disqualified from playing first base because handedness might be preferred by the manager of a baseball team for those reasons. And that would be permissible because it's a legitimate requirement of the position that you can catch the darn ball when it comes your way, right? Your Honor, to go always to the defense would mean that every employee in California has established an automatic case of disability and a grievance that requires the involvement of the court system. Well, I just don't understand why the sky is falling if we say that one-eyed people are disabled. I guess I just don't get it. Well, Your Honor, this Court has already said that one-eyed people are not disabled. Under Federal law. Under Federal law. Under Federal law. And the California law has not been changed in a way that alters that decision. I mean, the stereopsis point is very important to note. This Court said that people who are regarded as having no stereopsis are not regarded as disabled. That doesn't change under the fee law. I don't quite see how you can make the case that under California state law there is a good defense unless you concede that they're disabled. In order to show that it's unsafe for people blind in one eye to drive trucks, you have to say that they're nowhere near as able as people who can see through both eyes to drive trucks. Your Honor, I understand the logic, but I think it's – I disagree with it respectfully because we're not saying that they're unable to drive trucks. We're saying that they pose an increased risk of safety that we are not able to do. Sure, they're able to drive trucks. A blind man can drive a truck. You just don't want to be on the same road with them. The reason they are not disabled is not having anything to do with driving a truck is that they can see. They are not – seeing for them is not unusually difficult as compared to other people in the population. It's like handedness or height or something else that's not a disability that an employer may evaluate. Colorblindness is a perfect example. Our policy also screens out people with colorblindness. Colorblind people are not disabled. They simply see differently than other people, but they don't find things unusually difficult under California law. They can't tell that the truck's brown, huh? I'm sorry, Your Honor? They can't tell that the truck's brown. Well, they can't tell that the lights are red or green is the problem for a colorblind driver. You probably don't want them sorting socks or working in a fabric store. There may be other issues. So they might be disabled from the major life activity of working under California law. Your Honor, this Court, sitting in diversity under the Erie Doctrine, would be pushing California law. No California decision has ever gone that far. This Court's obligation is to apply the law as the California Supreme Court has interpreted it and as the California Courts of Appeals have interpreted it, unless you think that the California Supreme Court would reverse it. There is one decision that's directly on point, Maloney, which says that the truck driver who can't drive the long-distance truck because of his kidney problem is not disabled and working because he can do other jobs in his chosen profession. That's the kind of analysis that the California courts have applied. They didn't say that everybody's disabled. They have applied a more nuanced control. Again, CASISTA, the part of it that wasn't abrogated, says that all overweight people are not disabled. The legislature didn't quibble with that. The legislature has not made every Californian a disabled person. Nor would a decision in the plaintiff's favor in this case make every Californian disabled. I disagree with that, Your Honor. I think if the plaintiffs in this case were viewed as disabled in seeing, then every nearsighted and every farsighted person in California will be disabled and every person in California at some point in their lives is almost statistically sure to be either nearsighted or farsighted. And they admit in their brief that every farsighted person would be disabled under their reading. I don't think even the plaintiffs argue that imperfection from the magazine ideal is equivalent to disability, that people who wish they were a little shorter or a little taller or had curlier hair or more hair or less hair or whatever. I don't think that follows from their argument. No, Your Honor, but the mere difference in seeing, the fact that these individuals see within a narrow, close-in range, they perceive depth perception slightly different than other people, if that's enough, then all of us have vision issues that will render us disabled. And it's not just vision. It's eating and walking and who knows what else, because that really would be marking out a de minimis, any de minimis deviation from the norm renders one disabled. The California courts have not gone there. I sound like a broken record, but Komenaris says unusually difficult. You know, when I read Komenaris in preparation for this argument, it seemed to me that the gravamen of it was to say California law makes disability a much broader category than federal law because it does not include the word substantially. You're right, Your Honor. It has adopted a lesser standard of federal law, but has not gone all the way down to zero. It also went out of its way, and it's at page 1025 of the official reports, to re-endorse the American national standard of unusually difficult, so that while California law is more lenient than the federal standard, it does not purport to and does not, in fact, make every person disabled. I mean, if that were ‑‑ What passage am I supposed to look at? I've got the California ‑‑ looks like California reporter for Westlaw edition here. Maybe just tell me in terms of the Roman numeral. Your Honor, it says 29 Cal 4th at page 1025. I don't think I have the Westlaw. But look at page 1020 ‑‑ excuse me, 1030. The legislature knew that the FEHC in implementing FEHA was already applying the limits test, which is broader than the federal substantial limits standard. And later on the page, before and after passage of the Popink Act, the FEHC test was limits, not substantial limits. I think that's the passage that Judge Kleinfeld is ‑‑ I agree with that, Your Honor. I think they're taking the federal standard as being substantially limits, the California standard as being limits. And what does limits mean? It means unusually difficult as compared to others in the population. So where's the good part from your point of view of culminaries? Is it in part three? Your Honor, it is at page 1025 of the official reports. I don't have a Cal Reporter site. Read me the good part. This court has held that a physical handicap was not confined to a major physical ailment or defect. We construed physical handicap to be a condition of the body that has the disabling effect of making achievement unusually difficult. And then it goes on to describe how the legislature endorsed that standard when it amended the FEHA and how that standard was not changed by the Popink Act. So that the standard all along has been limits is the point of culminaries. Remember, because culminaries is a retroactivity decision. The California law has always been limits, and limits has always meant unusually difficult. So that, you know, put all those pieces together, that is what California law is, and that is what, under the Erie doctrine, this Court has to follow. So that whatever substantially limits means as a matter of federal law, it's something less, but it still has some kind of a de minimis escape hatch, if you will, because it is not unusually difficult. It's not a disability. So the fact that there's a mere difference doesn't make somebody disabled. Now, that – what do you do about the 1292 certification and how that limits what we can do? Well, Your Honor, there's two appeals, if you recall. The seating appeal, that's a final judgment. The whole case is up here. So you've got the seating issue. You've got Akins and Wilson. If you find they haven't waived it, which we think they have, then you've also got the working issue in their appeal, and you've got the affirmative defenses. You've got the whole case up in front of you in the seating appeal. In the working appeal, I think that it is significant that it's a 1292B certification. The judge certified a narrow question of statutory interpretation, whether a single job with a single employer is a disability in the major life activity of working, which we think is wrong for all the reasons that we've said. I mean, the legislature very carefully didn't say single job. They said particular employment. And employment means something different than a job. It means an occupation. Let me ask you the same question I asked opposing counsel. Assume for the sake of this question that the panel were to hold that the plaintiffs are disabled in terms of the major life activity of seeing. From your perspective, would there be any difference if there were a further consideration of the major life activity of working? In other words, once someone is in the category of disabled for some reason, is there anything different about the remainder of the analysis, depending on how many categories you put them in or which category you put them in? There may be, Your Honor, and the EEOC guidelines under the ADA actually speak to this. And they say that working is a residual category that should only be addressed if any other major life activity isn't affected. So as a matter of federal law, if they're disabled in seeing or any other major life activity, you never get to the working question. Right, but we're not on federal law here. I understand that. I'm offering that as an analogy. Okay. California law, no California court in the legislature has never addressed that question, nor do the regulations promulgated by FEHC. I think it makes sense as a policy matter, and the court would be making a policy judgment at that point, because it's not, there is no controlling authority. The reason for the EEOC's guidelines is that working is a, there's a circularity problem in working claims that the Supreme Court pointed out in Sutton and that the EEOC has recognized, and that if there's another major life activity to focus on, that is the better way to go. Okay. Can you, but I just want to be sure I'm not missing something here. Is there anything different about the remainder of the analysis once they are found disabled, assuming they are, from seeing? Is there any reason to go beyond that on the disability end before either returning the case to the district court or going on to look at the affirmative defenses? Your Honor, I think it's actually the other way. No, if the court finds that they are disabled in seeing, then we would proceed to the affirmative defenses. If the court were to affirm the finding on working, that a single job with a single employer is sufficient, then you've opened the floodgates to litigation in a way that the seeing decision wouldn't, because everybody can find one job that they're not, that they can't do because of some physical limitation, and you're just going to exponentially create, create feehaw litigation where there need be none. So, you know, certainly as a matter of judicial efficiency and so forth, either vacating that portion of the order or reaching it and reversing it would be important, because if it stands, it is going to have a deleterious effect on California employment litigation. And again, it's a federal court sitting in diversity going well beyond where we think California law is in an area that the California courts haven't yet spoken to and ought to be given the opportunity to speak to, where there are very good reasons to say that we just went too far in that regard. So you're suggesting that at least some of us are not fit to be ballerinas? Your Honor. I said what I came to say. Thank you, counsel. Thank you, Your Honor. I just want to clarify on the 1292 issue.  First of all, whether this record shows that plaintiffs are disabled in the major life activity of working within the meaning of feehaw and section 12926.1c thereof. So it is not as narrowly framed as the present counsel would suggest. Second of all, to go back to Judge Kleinfeld's concerns, some of my clients have driven. They were mistakenly certified by the Department of Transportation, and they drove trucks without incident. So I just want to make sure there isn't an unnecessary specter of fear here. And as to the hypothetical blind person, well, that person wouldn't be able to get a driver's license at all, which certainly is one of the requirements to drive anything at UPS. So I think we can alleviate the court's concern about that. No, I don't think that's true. You get a license, and then as long as you don't move, you can renew it forever without getting retested in most places, and you go blind from cataracts or diabetes or one thing or another? Well, I suppose if somebody got a driver's license and then went blind and didn't say anything. Big problem in Florida, blind people do drive. I suppose there is some risk of that, but I guess I just don't think it's substantial, Your Honor. Because one of the requirements at UPS is that you have a valid driver's license, and that was the only point I meant to make with the reference to the blind person. On the issue of unusual difficulty, the word unusual has never appeared in any version of FEHA. And hearkening back to Colmenares and then from there back to American National, which is where that comes from, in American National, ironically, the court found that somebody with high blood pressure, controlled by medication, was regarded as disabled because the employer didn't think that person could handle a specific job of being a sales and debit agent. So the notion that UPS would rely on that is, frankly, somewhat puzzling. But FEHA nowhere says unusually difficult. The statute by its term says difficult. The Department of Transportation does not regulate the smaller trucks that are at issue here, the ones that are 10,000 pounds or less, 10,001 pounds or less. And really that's what we're talking about, and I think that we should make that clear. Maloney, the opposing counsel mentioned, has effectively been overruled. That was a substantial limitation case. It's no longer good law. It's a pre-popping act. I guess finally the notion that monocular vision could be a de minimis disability or impairment, I just found that rather surprising that opposing counsel would say that. These are people who have monocular vision. They want a chance to drive. They may have impaired near-field depth precision, depth perception, excuse me, but they should have a chance to drive these trucks if they're able to. We're not talking about something that's de minimis. And I still think that just as a common sense matter, someone who has monocular vision is disabled under California law. Thank you, counsel. Thank you. POGIA versus UPS is submitted. We're adjourned until 9 a.m. tomorrow. All rise. Court is in session. The stand is adjourned. Thank you.
judges: Kleinfeld, Hawkins, Graber